1998-NMSC-011

958 P.2d 98

**Walter WISZNIA d/b/a Wisznia & Associates, AIA, Plaintiff–Appellant,**

v.

**STATE of New Mexico, HUMAN SERVICES DEPARTMENT, State of New Mexico, General Services Department, and Property Control Division, State of New Mexico, Defendants–Appellees.**

No. 22958.

Supreme Court of New Mexico.

April 13, 1998.

Roth, VanAmberg, Gross, Rogers, Ortiz & Fairbanks, L.L.P., C. Bryant Rogers, F. Joel Roth, Santa Fe, for Plaintiff–Appellant.

Hon. Tom Udall, Attorney General, Andrea Buzzard, William Keller, Assistant Attorneys General, Santa Fe, for Defendants–Appellees.

## OPINION

FRANCHINI, Chief Justice.

{1} The Human Services Department (HSD) published a Request for Proposals (RFP) to solicit bids for leased office space in Santa Fe. The bid proposal made by Walter Wisznia d/b/a Wisznia & Associates (Wisznia) was ranked first by the Selection Committee. HSD informed Wisznia that General Service Department (GSD) approval and legislative appropriation were required before HSD could enter into a lease. Following a period of over eight months, during which it was unclear whether GSD approval and legislative appropriation were forthcoming, HSD canceled the RFP in the best interest of the Department. Wisznia sued the State seeking damages for breach of contract or, in the alternative, on a theory of estoppel. The trial court determined that a contract had not been formed and further that Wisznia was not entitled to reliance damages. We affirm.

*Facts.*

{2} HSD sought office space in Santa Fe in a leased facility on a single site. A formal state competitive lease procurement process was initiated by HSD by issuance of a Request for Proposals on March 6, 1990. A Request for Proposals is "all documents, including those attached or incorporated by reference, used for soliciting proposals." NMSA 1978, § 13–1–81 (1984). The RFP was entitled "Request for Proposals for Leased Space Office Space." It provided that the HSD Selection Committee would review all proposals, and request that the top three ranked proponents develop dimensional floor plans for submission for final ranking and selection. The RFP stated "[t]he Selection Committee will *recommend to the General Services Department* the number one ranked proposal of the three finalists be awarded the lease." (Emphasis added.) Preference was not given on the basis of whether the space to be leased was provided from an existing building, a reconditioned building, or a new building. Wisznia's proposal involved the construction of a building on private land from which Wisznia would lease space to HSD.

{3} An Addendum to the RFP was sent to prospective proponents on May 3, 1990. Approval by GSD was mentioned twice in the Addendum. The Addendum informed proponents that "the Selection Committee will recommend to the General Services Department the number one ranked proponent of the three finalists be awarded the lease." On July 13, 1990, Wisznia was notified that his proposal was ranked as one of the top three proposals. On August 14, 1990, Wisznia was notified that its proposal was ranked number one by the Selection Committee. This letter reiterated the condition that General Services review and approval of all floor plans were necessary prior to granting approval to enter into the lease. The letter, addressed to Walter Wisznia from the HSD Bureau Chief, John Scanlon, explained that a meeting would be arranged with Wisznia, Scanlon, HSD Staff, and "the General Services Department architect, Mr. Carl Reed, to review floor plan requirements."

{4} On September 4, 1990, Mr. Wisznia received another letter from the HSD Bureau Chief informing him that HSD had selected his proposal, and that

[c]urrently, negotiations are under way to develop and enter into a ten year lease. Finalization of the lease is pending two things: 1) final approval by the General Services Division of the building plans and specifications; and 2) an appropriation by the New Mexico Legislature for the funding necessary for rental payments.

... Rental payments for the Santa Fe facility will begin upon the projected occupancy date of May 1, 1993 if the facility has been completed according to the pending lease agreement.

{5} HSD's selection of Wisznia as the provider of office space was announced in the September/October 1990 edition of the Human Services Communicator. The article included the following language: "Wisznia and Associates has been selected to develop plans and construct a new $27 million building to house the department's central office ... [I]f plans are approved by the General Services Department, HSD could occupy the building by May, 1993."

{6} On September 10, 1990, Max Coll, Chairman of the Legislative Finance Committee, wrote to HSD Secretary Alex Valdez "regarding the proposal for the Human Services Department central office building." This letter, a copy of which was sent to Wisznia, stated in pertinent part,

[p]lease be advised that since the legislature has not granted prior approval nor appropriated funds for this building, documents associated with its lease and/or purchase which may have been signed and/or processed will not be recognized as binding.

{7} On September 19, 1990, the HSD Bureau Chief wrote to Wisznia asking him to stop work until October 5, 1990, and informing Wisznia that the original RFP might be terminated and a new RFP issued requiring that State Highway Department land be used as the only site. In this letter, Scanlon informed Wisznia that "[i]n the event that HSD must cancel the original RFP, we ask that you prepare an itemized list of expenditures that you have incurred since you were notified of your selection." The Bureau Chief stated that he would "keep Wisznia informed as to the progress in resolving this issue."

{8} Following communications not directly relevant to this litigation, Wisznia was informed on June 28, 1991, by HSD Secretary, Richard W. Heim, that the RFP was canceled in the best interest of the Department. This letter referenced the provision in the September 4, 1990, letter that finalization of the lease was contingent upon final approval by GSD and appropriation by the New Mexico Legislature.

*Procedure.*

{9} Wisznia brought an action against the State, claiming breach of contract, seeking expenses incurred and/or lost profits and in the alternative on a theory of estoppel, seeking expenses only. HSD filed a motion to dismiss. The trial court held a hearing and denied HSD's motion to dismiss. A bench trial was held, and at the close of the case the court granted HSD's motion for a judgment against Wisznia.

*Standard of Review.*

{10} On appeal this Court reviews the evidence in the light most favorable to Appellee to determine whether there is substantial evidence to support the trial court's ultimate finding of fact. *See C.R. Anthony Co. v. Loretto Mall Partners,* 112 N.M. 504, 510, 817 P.2d 238, 244 (1991). The Court does not pass on the weight of the evidence or on the credibility of the witnesses. *See Platero v. Jones,* 83 N.M. 261, 261, 490 P.2d 1234, 1234 (Ct.App.1971). The Court will indulge every reasonable inference to support the trial court's findings, ignoring conflicts in the evidence unfavorable to the Appellee. *See C.E. Alexander & Sons v. D.E.C. International, Inc.,* 112 N.M. 89, 93, 811 P.2d 899, 903 (1991). The reviewing court must affirm if there is any reasonable ground that supports the trial court's decision, the question being whether there is evidence to support the result reached, rather than whether the evidence would have supported a different result. *See Gutierrez v. Albertsons, Inc.,* 113 N.M. 256, 260, 824 P.2d 1058, 1062 (Ct.App. 1991). However, this Court is not required to defer to the lower court's conclusions of law. *See C.R. Anthony Co.,* 112 N.M. at 510, 817 P.2d at 244. In this case we conclude that the trial court properly determined that a contract was not formed between Wisznia and HSD.

*A contract was not formed when HSD selected Wisznia's bid pending GSD approval and legislative appropriation.*

{11} Wisznia contends that a contract was formed when HSD selected his bid. It is Wisznia's view that: (1) the RFP and subsequent best and final offer solicitations were invitations to offer to enter into a contract; (2) Wisznia's original and best and final offers were offers to enter into a contract per the RFP; and (3) HSD's August 14, 1990 letter notifying him that his proposal was ranked first by the Selection Committee and September 4, 1990 letter stating that "[t]he Human Services Department has selected your proposal to build and lease a new office building" were an acceptance of that offer.

{12} There is no disagreement that Wisznia's best and final offer was an offer to enter a contract per the RFP. "A request for bids 'is not an offer but a request for offers' and bidders are making offers when they submit bids." *Planning and Design Solutions v. City of Santa Fe,* 118 N.M. 707, 714, 885 P.2d 628, 635 (1994), (quoting Restatement (Second) of Contracts § 28 (1979)).

{13} The parties disagree as to whether the August 14, 1990, and September 4, 1990, letters constitute an acceptance by HSD of Wisznia's offer resulting in the formation of a contract. The trial court found that the August 14, 1990, letter to Wisznia from HSD, which provided that GSD approval was required before a formal contract was entered into, was not an acceptance of Wisznia's offer to provide leased office space. The trial court also found that the September 4, 1990, letter required that finalization was contingent on final approval by GSD and appropriation by the legislature, and that these conditions were conditions precedent to formation of a valid written contract. We agree.

{14} A consideration of the question of whether a contract was formed begins with the settled principle that "the requirements of competitive bidding are strictly construed against the governmental authority proposing the bid." *K.L. Conwell Corp. v. City of Albuquerque,* 111 N.M. 125, 129, 802 P.2d 634, 638 (1990). In addition, our Procurement Code provides that it "shall be liberally construed and applied to promote its purposes and policies," NMSA 1978, § 13–1–29(A) (1984), and that one of its purposes is to "provide for the fair and equitable treatment of all persons involved in public procurement," § 13–1–29(C). In *Conwell,* we held that a contract was formed when the · city accepted the contractor's bid even though the notice of acceptance provided that the bidder was required to execute and deliver certain documents within ten days of receipt of notice. 111 N.M. at 130, 802 P.2d at 639. In that case we stated that the City's "acceptance of a valid bid constitutes a binding contract ... even though there may have been defective compliance with certain legal formalities." *Id.* at 129, 802 P.2d at 638.

We determined that a contract was formed when the bid was accepted, and that the requirement that the bidder deliver certain documents to the city's architect within a certain time after the bid was accepted, was a condition precedent to the City's obligation to perform. *Id.* We rejected the argument that the delivery of the documents was a condition precedent to contract formation. *Id.*

{15} This case is not like *Conwell,* the conditions in this case were not mere legal formalities. "[W]here certain things are required by law to be done by the board having authority to let the contract as conditions precedent, the law must be fully complied with before the contract can be considered as made." 10 Eugene McQuillin, *Municipal Corporations* § 29.71 (3d ed.1990). GSD approval and legislative appropriation were not mere legal formalities; they were conditions precedent to contract formation. Accordingly, we affirm the trial court holding that a contract was not formed in this case.

*Estoppel.*

{16} Wisznia argues that he is, at the least, entitled to his proposal preparation costs and/or his costs incurred in plan preparation from and after August 14, 1990. He argues that HSD is estopped, under the facts of this case, from refusing to pay his costs because he was not informed that HSD would claim the right to cancel after the award and after he had incurred costs in proposal and plan preparation. Although Wisznia is correct that there was no language in the RFP which specifically stated that HSD reserved the right to cancel after award, we conclude that Wisznia was at all times notified that HSD's performance depended upon GSD approval and legislative appropriation. The conditions of GSD approval were included in the RFP, the Addendum to the RFP, the August 14, 1990, letter informing Wisznia that his proposal was ranked first, and the September 4, 1990, letter of selection. Wisznia was always on notice of the requirements of GSD approval and legislative appropriation. Therefore, preparation costs in this case should not be awarded.

{17} Estoppel is rarely applied against the State and then only in exceptional circumstances where there is a shocking degree of aggravated and overreaching conduct or where right and justice demand it. *See Rainaldi v. Public Employees Retirement Bd.*, 115 N.M. 650, 657, 857 P.2d 761, 768 (1993). HSD's conduct in this case did not rise to this level. A claim of estoppel must assert detrimental and reasonable reliance. *See Continental Potash Inc. v. Freeport–McMoran, Inc.*, 115 N.M. 690, 698, 858 P.2d 66, 74 (1993) (explaining that to sustain a claim for equitable estoppel a party must assert reasonable reliance upon the acts or conduct of another and be induced to take or forgo a position to his prejudice or detriment.) Wisznia was informed from the outset that HSD's duty to perform was conditioned on GSD approval and legislative appropriation. We agree with HSD that Wisznia fails to show detrimental reliance. He does not argue, for example, that he would not have responded to the RFP if he had been explicitly informed that the award could be withdrawn after selection. We hold that estoppel should not be applied against the State in this case.

{18} Although HSD's halt work letter of September 19, 1990, did ask Wisznia to itemize his expenses from the time his proposal was selected, we conclude that Wisznia could not reasonably rely on this representation as a promise to pay preparation costs. Wisznia had already incurred the expenses and either knew or should have known that he could not be reimbursed with State funds in the absence of GSD approval and legislative appropriation. We agree with the trial court that Wisznia failed to establish reasonable reliance. Wisznia is not entitled to recovery of those expenses. We conclude that an equitable remedy is not appropriate.

*Conclusion.*

{19} We affirm the trial court and hold that a contract was not formed between Wisznia and HSD. We further hold that Wisznia is not entitled to an equitable remedy.

{20} IT IS SO ORDERED.

McKINNON, J., and JOHN W. POPE, District Judge (sitting by designation), concur.